UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Mark Allen Grams,

        Plaintiff,                  Civ. No. 13-1550 (RHK/SER)
                                       **MEMORANDUM OPINION**
                                         **AND ORDER**
v.

Mike Duzan, *et al.*,

        Defendants.

Andrew M. Irlbeck, St. Paul, Minnesota, Paul Applebaum, Applebaum Law Firm, St. Paul, Minnesota, for Plaintiff.

Nathan Midolo, Jason M. Hiveley, Iverson Reuvers LLC, Bloomington, Minnesota, for Defendants.

**INTRODUCTION**

This case arises out of Plaintiff Mark Allen Grams's arrest in Chaska, Minnesota, in the early morning hours of July 15, 2009. Grams alleges he was arrested without probable cause and that the arresting officers used excessive force while taking him into custody, in violation of the Fourth Amendment to the United States Constitution.[1] Presently before the court is Defendants' Motion for Summary Judgment (Doc. No. 17). For the reasons that follow, the Motion will be granted in part and denied in part.

---

[1] Although the Amended Complaint alleges the officers' conduct violated the Fourth *and* Fourteenth Amendments, this is two different ways of stating the same claim, as the Fourth Amendment is made applicable to state actors through the Fourteenth Amendment, see, e.g., Mapp v. Ohio, 367 U.S. 643, 655 (1961); Grams does not contend otherwise in his brief.

**BACKGROUND**

Viewed in the light most favorable to Grams, the record reveals the following facts.  At approximately 12:30 a.m. on July 15, 2009, two individuals in a tow truck arrived at Grams's residence in Chaska, Minnesota, to repossess his 2006 Nissan Sentra. (Grams Dep. at 22-24.)  They began pushing the car out of the driveway to attach it to the truck when Grams's neighbor Greg Anderson saw what was happening and called Grams.  (Id.)  Grams came outside and approached one of the repossessors, later identified as Christopher Tolk.  (Id. at 24)  Grams informed Tolk he had filed for bankruptcy and the car was subject to a stay of repossession.  (Id. at 24-25.)  Anderson, meanwhile, yelled at the driver of the tow truck, claiming he was trespassing.  (Id. at 30-31.)  Grams requested the presence of law enforcement, and the truck driver called police.  (Id. at 26.)

Grams then unlocked the Sentra, and Tolk sat in the driver's seat while Grams began collecting his belongings from the vehicle.  (Id. at 26-28.)  At some point, Anderson's wife parked a van on the street to block the tow truck from leaving.  (Id. at 26; Duzan Dep. at 13.)  This also prevented Defendants Mike Duzan and Lee McClure, Chaska police officers, from driving up to Grams's residence; instead, when they arrived they were forced to park away from the residence and walk to the scene.  (Duzan Dep. at 16.)  McClure approached the van and instructed Mrs. Anderson to move it out of the way, while Duzan approached the car and spoke to Grams, who was still in the process of gathering his belongings.  (McClure Dep. at 13; Duzan Dep. at 19.)

Grams explained the situation to Duzan, including the bankruptcy stay, but Duzan told him the car would still be repossessed and that he should finish gathering his things. (Grams Dep. at 34.) Grams then rolled up his belongings in a piece of carpet from the Sentra's trunk and began carrying them to a pickup truck parked in his driveway. (Id. at 42-43.) As he passed the open driver's side door of the Sentra, he bumped the door.[2] He then continued walking while Duzan ordered him to stop. (Duzan Dep. at 21-22; Grams Dep. at 47.) Grams nevertheless continued to the pickup, taking six to eight additional steps, and reached over the side to drop the carpet into the truck's bed. (Duzan Dep. at 21; Grams Dep. at 47.)

The parties dispute the events that followed, but according to Grams, Duzan approached him from behind while his (Grams's) arms were over the pickup's side, wrapped his arm around Grams's neck, and placed him in a "choke hold" that cut off his breathing. (Grams Dep. at 47-48, 52.) While choking Grams, Duzan allegedly said, "When I tell you to stop, it means stop. Now you are under arrest," at which point Grams lost consciousness. (Id. at 52-53.) When he "came to," Duzan was still applying the choke hold and a second officer was holding his legs, meaning he was entirely off the ground. (Id. at 53-56). Grams was brought to the ground with Duzan maintaining the choke hold, the second officer holding his legs, and a third officer holding his feet. (Id. at 59-60.) Grams's wife then came outside and began questioning the officers. (Id.) After

---

[2] The parties dispute the nature of the contact with the door. Grams claims he unintentionally bumped the door with the carpet (Grams Dep. at 43-45), while Duzan claims Grams "punched" the door with his hand (Duzan Dep. at 20-22).

she mentioned the premises' security cameras,[3] Duzan released his hold. (Id.; R. Grams Aff. ¶ 7.) The officers handcuffed Grams and walked him to McClure's squad car; he reported being in pain and requested medical attention several times. (Grams Dep. at 62-65.)[4]

After being released from custody the following day,[5] Grams visited the emergency room for "injuries to his right face, neck, chest wall, [and] flank." (Irlbeck Aff. Ex. 7, at 1.) He now asserts the choke hold caused a vertebra in his neck to shift and contact a nerve, causing ongoing neck pain and frequent, severe headaches that he believes are permanent. (Id. Ex. 8; Grams Dep. 74-79.)

Grams commenced this action in June 2013, alleging that Duzan and McClure arrested him without probable cause and employed excessive force during the arrest, both in violation of the Fourth Amendment. The Amended Complaint also alleges claims for assault and battery against these Defendants and that Defendant City of Chaska ("the

---

[3] Although the residence had security cameras, they were not recording at the time of the incident.

[4] Defendants' account of the arrest differs substantially. They assert Duzan repeatedly ordered an agitated Grams to stop, but he ignored these commands and continued walking toward the pickup. (Duzan Dep. at 20-21.) The officers then approached Grams from behind and grabbed for his arm to prevent him from possibly reaching for a concealed weapon. (McClure Dep. at 15-17.) Grams spun around, pulling his arms away from the officers. (Id. at 17-18.) The officers grabbed for his arms again, continually informing him that he was under arrest, but Grams "dropp[ed] his center of gravity" and grabbed Duzan's leg. (Id. at 18.) The officers pried him from Duzan's leg and brought him to his back, handcuffing one arm. (Duzan Dep. at 26.) Grams then allowed the officers to roll him on to his stomach, and he willingly put his arms behind his back to be handcuffed. (Id. at 27-28.)

[5] Grams was charged with disorderly conduct and obstructing legal process but was eventually acquitted of these charges. (Midolo Aff. Ex. 1 at 5-6.)

City") is vicariously liable for these torts. Defendants now seek summary judgment on all of Grams's claims. The Motion has been fully briefed and is ripe for disposition.

## STANDARD OF DECISION

Summary judgment is proper if, drawing all reasonable inferences in favor of the nonmoving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Ricci v. DeStefano, 557 U.S. 557, 586 (2009). The moving party bears the burden of showing the material facts in the case are undisputed. Whisenhunt v. Sw. Bell Tel., 573 F. 3d 565, 568 (8th Cir. 2009). The nonmoving party may not rest on mere allegations or denials, but must show through the presentation of admissible evidence that specific facts exist creating a genuine issue of material fact for trial. Fed. R. Civ. P. 56(c)(1)(A); Wood v. SatCom Mktg., LLC, 705 F.3d 823, 828 (8th Cir. 2013).

## ANALYSIS

### I. The federal claims

#### A. Qualified immunity generally

The officers argue they are entitled to qualified immunity on Grams's federal claims.[6] "Qualified immunity shields government officials from liability . . . unless the official's conduct violates a clearly established constitutional . . . right of which a

---

[6] The Court notes the officers have been sued in both their official and individual capacities. But official-capacity claims against government officials are the functional equivalent of claims against the municipal entity in question (known as a Monell claim), see, e.g., Rogers v. City of Little Rock, Ark., 152 F.3d 790, 800 (8th Cir. 1998), and Grams has acknowledged having no Monell claim against the City here. (See Mem. in Opp'n at 1.) Accordingly, the Court will dismiss Grams's official-capacity claims, and the analysis that follows concerns only his claims against the officers in their individual capacities.

reasonable person would have known." LaCross v. City of Duluth, 713 F.3d 1155, 1157 (8th Cir. 2013). "Officers are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." Luckert v. Dodge Cnty., 684 F.3d 808, 817 (8th Cir. 2012) (citation omitted). Determining whether the officers are entitled to qualified immunity requires the Court to answer two questions: Do the facts alleged, viewed in the light most favorable to Grams, show the challenged conduct violated a constitutional right? Keil v. Triveline, 661 F.3d 981, 985 (8th Cir. 2011) (citing Pearson v. Callahan, 555 U.S. 223, 232 (2009)). If so, was that right clearly established on the date in question? Id.

### B. Unlawful arrest

The Court begins its analysis with Grams's unlawful-arrest claim. It is undisputed that on July 15, 2009, it was clearly established that "a warrantless arrest without probable cause violate[d] an individual's constitutional rights under the Fourth . . . Amendment[]." Walker v. City of Pine Bluff, 414 F.3d 989, 992 (8th Cir. 2005) (citation omitted). However, qualified immunity applies to police officers who make mistakes in arrests, as long as those mistakes are reasonable. Id. As a result, the standard for an unlawful-arrest claim "is not probable cause in fact but *arguable* probable cause . . . that is, whether the officer should have known that the arrest violated [Grams]'s clearly established right[s]." Id. (emphasis added) (citation omitted). To determine whether "arguable probable cause" for an arrest existed, "the question is whether a reasonable officer could have believed [the arrest] to be lawful, in light of . . . the information the [arresting] officer[] possessed." Robinson v. City of Minneapolis, 957 F. Supp. 2d 1094, 1101 (D. Minn. 2013) (Kyle, J.) (internal quotation marks and citation omitted).

Here, it is undisputed Grams struck the car door with the carpet, causing a noise to which Duzan responded by giving a lawful command to stop, which Grams did not follow. In Minnesota, a person is guilty of a misdemeanor if he intentionally "obstructs, resists, or interferes with a peace officer while the officer is engaged in the performance of official duties." Minn. Stat. § 609.50, subd. 1(2). In the Court's view, a reasonable police officer on the scene could have believed Grams obstructed or resisted when he failed to follow a lawful order to stop, and accordingly, a reasonably competent officer could have concluded there was probable cause to arrest him. Hence, the officers are entitled to qualified immunity on the unlawful-arrest claim.

### C. Excessive Force

#### 1. *De minimis* injury

There is no dispute that on the date of Grams's arrest it was clearly established police officers could not use excessive force against an arrestee. See, e.g., Graham v. Connor, 490 U.S. 386, 396-97 (1989). However, the officers argue the law at that time was unclear whether it violated an arrestee's rights to apply force causing only *de minimis* injury.

"[O]ver the course of more than fifteen years . . . it remain[ed] an open question in this circuit whether an excessive-force claim required some minimum level of injury." Chambers v. Pennycook, 641 F.3d 898, 904 (8th Cir. 2011). Chambers resolved this issue, holding the excessive-force inquiry must focus on the force applied and not on the level of injury sustained. Id. at 906. Plaintiffs, therefore, are no longer required to show more than a *de minimis* injury to establish excessive force. Id. at 907. However, the law

on this issue was not clearly established until Chambers. Robinson, 957 F. Supp. 2d at 1098-99. As Grams was arrested in 2009, more than a year before Chambers, he must show more than a *de minimis* injury in order to defeat qualified immunity. Id. The officers argue he has not done so, but the Court agrees only in part.

Grams has supplied some evidence[7] suggesting Duzan's choke hold caused, among other things, a permanent spinal injury causing him frequent, debilitating headaches, as well as permanent soft-tissue damage to his neck. Such injuries are more than *de minimis*. See Crumley v. City of St. Paul, 324 F.3d 1003, 1008 (8th Cir. 2003) (evidence of long-term injury resulting from handcuffing would be more than *de minimis*); Keten v. Mosey, Civ. No. 11-1520, 2013 WL 870378, at *5 (D. Minn. Mar. 8, 2013) (Frank, J.) ("bruising to [Plaintiff's] neck and back, lasting pain in his neck, back and head, and a decreased range of motion in the lumbar region of his spine" more than *de minimis*). Accordingly, Duzan is not entitled to qualified immunity on *de minimis* injury grounds.

The Court reaches a different conclusion with respect to McClure, however.[8] While Grams makes clear Duzan applied the choke hold, the most that can be said for McClure is that he held down Grams's legs or feet during the handcuffing process.

---

[7] (See Irlbeck Aff. Exs. 6-9; Pl. Resp. Def. Int. at 5-6; Grams Dep. at 76-78.)

[8] The Court must separately analyze each officer's conduct to determine if a Fourth Amendment violation occurred. Heartland Acad. Cmty. Church v. Waddle, 595 F.3d 798, 805-06 (8th Cir. 2010) ("Liability for damages for a federal constitutional tort is personal, so each defendant's conduct must be independently assessed.") (citation omitted).

Nothing in the record suggests these actions caused *any* injury, let alone an injury more than *de minimis*. Hence, McClure is entitled to qualified immunity.[9]

### 2. Reasonable under the circumstances

Although Duzan cannot escape liability based on *de minimis* injury, he also argues he is entitled to qualified immunity because he employed a reasonable amount of force while effecting Grams's arrest and, hence, did not violate his clearly established constitutional rights. In determining whether a use of force is "reasonable" under the Fourth Amendment, the Court must consider the "totality of the circumstances," balancing the "nature and quality of the intrusion on [Grams's] Fourth Amendment interests against the countervailing government interests at stake." Copeland v. Locke, 613 F.3d 875, 881 (8th Cir. 2010) (citations omitted). The use of force must be judged from the "perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," and allow for the fact that police officers must make split-second decisions in often tense situations. Graham, 490 U.S. at 396-97. The inquiry is objective, "without regard to [the officer's] underlying intent or motivation." Id. at 397.

Here, the parties dispute the events immediately prior to Grams's arrest, the demeanor of the individuals involved, whether Grams resisted, and the degree and kind of force used to detain him. Under Grams's version of events, however, he bumped the

---

[9] In his Amended Complaint, Grams alleged McClure violated the Fourth Amendment by holding him down during the handcuffing. In his brief, however, he attempts to alter the nature of his claim, asserting McClure is liable for *failing to intervene* in Duzan's actions. (Mem. in Opp'n at 18-19.) Yet, a party may not re-cast his claims in his memorandum responding to a dispositive motion. See, e.g., Morgan Distrib. Co. v. Unidynamic Corp., 868 F.2d 992, 995 (8th Cir. 1989); Rau v. Roberts, Civ. No. 08-2451, 2010 WL 396223, at *8 (D. Minn. Jan. 27, 2010) (Kyle, J.), aff'd, 640 F.3d 324 (8th Cir. 2011).

car door and then, after a single order to stop, took 6 to 8 steps to set down a heavy bundle of items. There is no evidence he was violent or that Duzan believed he was armed. There is no evidence he struggled with or physically resisted the officers. Under these facts, a reasonable jury could conclude that choking him to unconsciousness without warning was an unreasonable use of force. See Brown v. City of Golden Valley, 574 F.3d 491, 498 (8th Cir. 2009) (use of Taser on nonviolent, suspected misdemeanant who was not fleeing or resisting and posed little threat to officer safety was excessive). Accordingly, Duzan is not entitled to qualified immunity.

## II. Assault and Battery

Grams next asserts claims against Duzan and McClure for assault and battery under Minnesota law[10] and argues the City is vicariously liable for these torts. Defendants contend they are entitled to official immunity on these claims. "Official immunity shields a public official from liability if he is charged by law with duties which call for the exercise of his judgment or discretion and, in performing those duties, he has not committed a willful or malicious wrong." Grady v. Becker, 907 F. Supp. 2d 975, 985 (D. Minn. 2012) (Kyle, J.) (citation omitted) (internal quotation marks omitted).[11] "In the

---

[10] Assault requires proof of "threaten[ed] bodily harm to another with the present ability to effectuate that threat," Hixon v. City of Golden Valley, Civ. No. 06–1548, 2007 WL 1655831, at *10 (D. Minn. June 7, 2007) (Kyle, J.) (citation omitted), while battery requires "an intentional and unpermitted contact by defendant on the person of the plaintiff," Johnson v. Peterson, 358 N.W.2d 484, 485 (Minn. Ct. App. 1984). Though these are two different claims, the parties do not distinguish them in their Motion papers. Accordingly, the Court follows their lead and analyzes them together.

[11] Official immunity generally applies only to discretionary acts, but it is undisputed the amount of force used to effect an arrest is a discretionary decision. See also McClennon v. Kipke, 821 F. Supp. 2d 1101, 1111 (D. Minn. 2011) (Kyle, J.).

context of official immunity, 'willful' and 'malicious' are synonymous, as 'malice' means nothing more than the intentional doing of a wrongful act without legal justification or excuse, or, otherwise stated, the willful violation of a known right." Id. (quoting Brown, 574 F.3d at 500–01) (internal quotation marks omitted).  If the officers are entitled to official immunity, the City is equally entitled to "vicarious official immunity."  See Smith v. City of Minneapolis, 754 F.3d 541, 549 (8th Cir. 2014).

As already noted, there is a fact dispute regarding whether Duzan used excessive force during the arrest.  Accepting Grams's account of the arrest as true, a reasonable jury could find Duzan intentionally violated his clearly established right to be free from excessive force, and hence Duzan is not entitled to official immunity.  For this same reason, the City is not entitled to vicarious official immunity.  See Wiederholt v. City of Minneapolis, 581 N.W.2d 312, 316 (Minn. 1998).

As discussed above, however, a reasonable jury could not conclude McClure used excessive force.  The right to make an arrest "necessarily carries with it the right to use some degree of physical coercion . . . to effect it," Graham, 490 U.S. at 396, and here Grams alleges only that McClure held his legs or feet during the handcuffing process and points to no resultant injury.  In the absence of any evidence McClure "intentional[ly] [committed] a wrongful act," Brown, 574 F.3d at 501, he is entitled to official immunity, and the City is entitled to vicarious official immunity.

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that Defendants' Motion for Summary Judgment (Doc. No. 17) is

- 11 -

**GRANTED IN PART** and **DENIED IN PART**.  The Motion is **GRANTED** with respect to (1) all of Grams's claims against McClure, (2) the claims against Duzan in his official capacity, (3) the unlawful-arrest claim against Duzan in his individual capacity, and (4) the assault and battery claims against the City, to the extent they arise out of McClure's conduct, and these claims are **DISMISSED WITH PREJUDICE**.  The Motion is **DENIED** with respect to Grams's excessive-force claim against Duzan in his individual capacity, the assault and battery claims against Duzan, and the assault and battery claims against the City arising out of Duzan's conduct.

Dated: August 4, 2014                                  s/Richard H. Kyle            
                                                                            RICHARD H. KYLE
                                                                            United States District Judge